**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL ACTION NO. 1:25-CV-00318-SCR-MTO**

| | | |
|---|---|---|
| **DAVID WATTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**THIS MATTER** is before the Court on "Plaintiff's Brief" (Doc. No. 7), "Defendant's Brief" (Doc. No. 8) and "Plaintiff's Reply Brief" (Doc. No. 9).[1] This case was reassigned to the undersigned on December 26, 2025.

Having fully considered the arguments, the record, and the applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is not supported by substantial evidence and remands this matter to Commissioner for further proceedings consistent with this Order, as discussed below.

## I. PROCEDURAL HISTORY

The Court adopts the procedural history as stated in the parties' briefs and discusses relevant portions below.

Plaintiff filed the present action on September 18, 2025. He assigns error to the Administrative Law Judge's ("ALJ") formulation of his mental Residual Functional Capacity ("RFC"),[2] specifically arguing that the ALJ's RFC determination was not supported by substantial

[1] Following amendments to the Supplemental Rules for Social Security Actions, see 42 U.S.C. § 405(g), and to Local Civil Rule 7.2, the parties are no longer required to file dispositive motions.
[2] The Social Security Regulations define "Residual Functional Capacity" as "the most [a claimant] can still do despite

evidence because the ALJ "fundamentally mischaracterized [consultative expert] Dr. [Heather] Bossong's comprehensive psychological evaluation by ignoring all standardized psychological test results… and fail[ing] to articulate supportability and consistency [under 20 C.F.R. § 404.1520c(b)(2).]" (Doc. No. 7 at 12–16; Doc. No. 9 at 6–9).

Dr. Bossong conducted a comprehensive psychological evaluation of Plaintiff on February 28 and March 8, 2024. (Tr. 480–86). Dr. Bossong administered a full battery of standardized psychological tests specifically designed to objectively measure mental health symptoms and functional capacity: Beck Depression Inventory II (BDI-II): Total Score of 48, indicating severe depression (Tr. 483-484); Beck Anxiety Inventory (BAI): Total Score of 33, indicating severe anxiety (Tr. 484); Adult Self Report (ASR): Clinically significant elevations with T-Score of 82 on Depressive Problems and T-Score of 80 on Avoidant Personality Problems (scores above 70 are considered "very elevated") (Tr. 483); and the Personality Assessment Inventory (PAI): Marked elevations on depression scales with validity indicators showing Mr. Watts "responded in a consistent manner and did not present himself in an exaggerated or unfavorable impression." (Tr. 483–84). Dr. Bossong specifically stated that Plaintiff's "responses indicated that he has Severe levels of depression (Total Score=48)" (Tr. 483); that Plaintiff's "profile revealed marked elevations on scales of depression indicating that he feels hopeless, discouraged, and useless. Interpersonally, he is likely to be socially withdrawn and feel misunderstood by others. Additionally, his profile suggests that he is socially isolated and alienated by others." (Tr. 484);

your limitations." 20 C.F.R. § 404.1545(a)(1). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] [R]esidual [F]unctional [C]apacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The agency's regulations establish a five-step sequential evaluation, by which the Commissioner considers, in sequence, whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the severity of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform other work. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Between steps three and four, the claimant's residual functional capacity is evaluated. 20 C.F.R. § 404.1545(a)(1).

and that Plaintiff's "Major Depressive Disorder significantly impacts his occupational and social functioning, leading to notable functional limitations." (Tr. 485).

Based on these test results and her mental status evaluation of Plaintiff, Dr. Bossong found among other things that Plaintiff had extreme (that is, the highest level and disabling) limitations in interacting with others; marked (that is, disabling) limitations in concentration, persistence, and pace; and marked (disabling) limitations in adapting and managing oneself. (Tr. 485). Dr. Bossong also opined Plaintiff would be absent from work two or more days per month and off-task 15% or more of the workday due to his treatment-resistant depression. (Tr. 484).

The ALJ found that Plaintiff suffered several severe impairments: depressive disorder, anxiety disorder, and personality disorder. The ALJ found that Plaintiff had the RFC to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: able to understand, remember and carry out simple instructions and use judgment to make simple work related decisions; able to adapt to occasional changes in routine work settings and maintain concentration and persistence for at least 2 hours at a time throughout an 8-hour workday with regular breaks; should not have work requiring a specific production rate (such as work that requires strict hourly quotas); able to have occasional interaction with the public that does not involve adversarial activities (such as job tasks that require addressing customer complaints); and able to have occasional interaction with co-workers. "Interaction" is defined as oral communication.

(Tr. 30) (emphasis omitted). Applying this RFC, the ALJ then found that Plaintiff was unable to perform his past relevant work. (Tr. 40). Based on this RFC and the testimony of a Vocational Expert, the ALJ then found that Plaintiff was capable of working as a floor cleaner, sweeper/cleaner and warehouse worker and, therefore, was not disabled. (Tr. 40–41).

## II. DISCUSSION

The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards.

Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Biestek v. Berryhill, 587 U.S. 97, 102–03 (2019); Oakes v. Kijakazi, 70 F.4th 207, 212 (4th Cir. 2023); Arakas v. Comm'r of Soc. Sec., 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is 'more than a mere scintilla' and '[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Oakes, 70 F.4th at 212 (quoting Biestek, 587 U.S. at 103). "The threshold is 'not high' and defers to the ALJ, 'who has seen the hearing up close.'" Id. (quoting Biestek, 587 U.S. at 103, 108). "In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for the ALJ's." Id. (quoting Arakas, 983 F.3d at 95). "But 'even under this deferential standard, we do not reflexively rubber-stamp an ALJ's findings.'" Id. (quoting Lewis v. Berryhill, 858 F.3d 858, 870 (4th Cir. 2017)).

"To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." Id.; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (finding the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion); Patterson v. Comm'r of Soc. Sec., 846 F.3d 656, 663 (4th Cir. 2017). In Patterson, the Court explained:

> We do not take a position on the merits of [Plaintiff's] application for disability benefits. Instead, the dispute here arises from a problem that has become all too common among administrative decisions challenged in this court—a problem decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable.

846 F.3d at 663 (citing Kohler v. Astrue, 546 F.3d 260, 267 (2d Cir. 2008)).

The question before the ALJ was whether Plaintiff became disabled at any time.[3] The ALJ is responsible for assessing a claimant's RFC. See 20 C.F.R. §§ 404.1546(c), 416.946(c). In

[3] The term "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . [.]

42 U.S.C. § 423(d)(1)(A); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

making that assessment, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. See Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ also must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts. . . and nonmedical evidence[.]" Id. at *7.

SSR 96-8p explicitly directs:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

Id. at *5.

Plaintiff has the burden of establishing his RFC by showing how his impairments affect his functioning. See 20 C.F.R. §§ 404.1512(a), 416.912(a); see also, e.g., Plummer v. Astrue, No. 5:11-cv-06-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) ("The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC[.]"), Mem. & R. adopted, 2012 WL 1858844 (May 22, 2012), aff'd, 487 F. App'x 795 (4th Cir. 2012).

In Mascio, the Fourth Circuit observed "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019) ("ALJ's analysis of

[plaintiff's] RFC contains too little logical explanation for us to conduct meaningful appellate review.").

The ALJ is not to defer to or give any specific weight to medical opinions based on their source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, ALJs are instructed to consider and evaluate the persuasiveness of the opinion evidence by considering the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(b), (c), 416.920c(b), (c). Supportability and consistency are the most important factors to consider, and an ALJ must explain how these factors are considered in determination or decision. See 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). The ALJ may, but is not required to, explain how the other factors are considered. 20 C.F.R. §§ 404.1520c(b)(2), (c), 416.920c(b)(2), (c).

In evaluating the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Supportability" denotes "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation[.]" Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017); see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

As for the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical

finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In other words, "consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

As Plaintiff argues, Dr. Bossong's opinions were based both on standardized testing, all of which resulted in findings supporting her opinion, and a mental status examination, that is, a conversation between Dr. Bossong and Plaintiff (Tr. 480–86). Yet the ALJ fails to adequately address these test results. Rather the ALJ stated: "Dr. Bossong noted that the claimant reported significant symptoms on measures that rely on self-report. However, Dr. Bossong's <u>objective evaluation</u> was entirely inconsistent with <u>the claimant's self-report.</u>" (Tr. 37) (emphasis added). This statement ignores and contradicts the findings from the testing, which support Plaintiff's subjective complaints. As an explanation of that conclusion, the ALJ only listed favorable findings from the mental status examination such as that Plaintiff is "friendly," "cooperative," "had good eye contact," has "normal" speech and logical thought process, has good memory and no concentration problems, and completed serial 7s without error, and ultimately concluded that "Dr. Bossong's opinion is not at all persuasive." (Tr. 37–39). The ALJ stated there were "other issues, like gaming [World of Warcraft], that prevent [Plaintiff] from keeping a regular schedule." (Tr. 38).

Similarly, the ALJ failed to adequately address factors of supportability or consistency in evaluating Dr. Bossong's opinion, nor did the ALJ perform an analysis that met the requirements of those factors.

The Government devotes its brief to arguing generally that the ALJ's evaluation of Dr. Bossong's opinion was proper, provides a supportability and consistency analysis that was missing

from the hearing decision, and invites the Court to infer that the ALJ properly considered Dr. Bossong's opinion (Doc. No. 8 at 12–15). This the Court will not infer, and therefore, the ALJ's failure to properly explain her evaluation of Dr. Bossong's opinion warrants remand.

"It is the duty of the ALJ to 'build an accurate and logical bridge from the evidence to his conclusion.'" Walker v. O'Malley, No. 1:23-cv-000358-MR, 2024 WL 3647646, at *1 (W.D.N.C. July 31, 2024) (quoting Monroe, 826 F.3d at 189). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Id. (quoting Mills v. Berryhill, No. 1:16-cv-00025-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017)); Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Accordingly, remand is required.

## III. ORDER

**IT IS, THEREFORE, ORDERED** that the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).[4]

**SO ORDERED**.

Signed: September 30, 2026

Susan C. Rodriguez
United States District Judge

[4] Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see also Sullivan v. Finkelstein, 496 U.S. 617, 625 (1990). In this case, a new hearing is required.